IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
WILLIAM COREY DAWKINS,           )
                                 )
                Plaintiff,       )
                                 )
        v.                       )       1:12CV414
                                 )
RICHMOND COUNTY SCHOOLS and      )
MARSHA PORTER (principal),       )
                                 )
                Defendants.      )
```

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1), filed in conjunction with Plaintiff's pro se form Complaint asserting employment discrimination claims against Defendant Richmond County Schools ("RCS") and Defendant Marsha Porter (Docket Entry 2). The Court will grant Plaintiff's request to proceed as a pauper because his Application demonstrates financial eligibility and his Complaint appears to state a viable claim against Defendant Porter under 42 U.S.C. § 1983 for discrimination based on sexual orientation in contravention of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Before this litigation proceeds any further, however, in the interest of effective case-management, the Court will order that:

1) if Plaintiff agrees to proceed only against Defendant Porter under Section 1983 for violating the Equal Protection Clause

by discriminating on the basis of sexual orientation, he shall file a written notice to that effect; or

2) if Plaintiff wishes to pursue any cause of action other than one against Defendant Porter under Section 1983 for violating the Equal Protection Clause by discriminating on the basis of sexual orientation, he shall file an Amended Complaint that clearly identifies and that contains sufficient factual allegations to support any such additional cause(s) of action <u>or</u> he shall file a memorandum showing cause why the allegations in the Complaint suffice to support any such additional cause(s) of action.

LEGAL BACKGROUND

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting <u>Adkins v. E.I. DuPont de Nemours & Co.</u>, 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." <u>Nagy v. Federal Med. Ctr. Butner</u>, 376 F.3d 252, 255 (4th

Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines that – . . . (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

As to the second of these grounds for dismissal, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

---

[1] Although the United States Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th

PLAINTIFF'S COMPLAINT

The Complaint alleges that Plaintiff is "a bisexual/gay male" and that Defendant RCS and Defendant Porter "discriminated against [Plaitiff] based on [his] sexual orientation and gender." (Docket Entry 2 at 2.) According to the Complaint, Defendant RCS employed Plaintiff for the 2010-11 school year as a teacher at a school at which Defendant Porter served as principal and at which the faculty consisted of "24 teachers, 3 of which were <u>male</u>." (<u>Id.</u> at 2, 4 (emphasis in original).) The Complaint states that Plaintiff is "an excellent teacher, who has always had a great rapport with children of all ages." (<u>Id.</u> at 3; <u>see also</u> <u>id.</u> at 6 (alleging that students "always enjoyed [Plaintiff's] lessons").)

As support for Plaintiff's claims of unlawful employment discrimination based on sexual orientation and gender, the Complaint first asserts that Defendant Porter "did not seem to respect [Plaintiff] from the start." (<u>Id.</u> at 2.) It further alleges that Defendant Porter "seemed to favor the females [on the faculty], and often went out of her way to speak and be personable with them." (<u>Id.</u> at 3.) The Complaint acknowledges that, "[i]n

---

Cir. 2008) (internal quotation marks omitted) (applying <u>Twombly</u> in dismissing pro se complaint); <u>accord</u> <u>Atherton v. District of Columbia Off. of Mayor</u>, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting <u>Erickson</u>, 551 U.S. at 94, and <u>Iqbal</u>, 556 U.S. at 678-79, respectively)).

4

early December [2010], . . . a few parents, and PTO [Parent-Teacher Organization] members approached [Defendant] Porter with 'concerns' of misconduct." (Id.)[2]  However, according to the Complaint, "[t]here was no formal investigation by authorities, nor charges filed [and,] . . . [a]t NO TIME, ever, have the students entrusted to [Plaintiff's] care, been in an un-safe environment." (Id. (capitalization and emphasis in original).)

Nonetheless, the Complaint alleges that, "[i]mmediately following the [expression of parental concerns], [Defendant] Porter called [Plaintiff] into her office. She stated that '[Plaintiff] didn't belong here' and reported the allegations made by parents. It was at that point [Plaintiff] began to fear that [Defendant Porter] might not renew [Plaintiff's] contract." (Id.)

Next, the Complaint states that, in "mid-March [2011], [Defendant RCS's personnel director] called an un-announced conference with [Defendant] Porter, [an assistant principal], and [Plaintiff]." (Id.) According to the Complaint, during the conference, Defendant RCS's personnel director "showed no support for [Plaintiff,] . . . did not serve as an affective [sic] liaison [and] sided with [Defendant] Porter." (Id. (emphasis in original).) The Complaint further asserts that, when Defendant

---

[2] The Complaint does not describe the "misconduct" as to which parents expressed concern (see Docket Entry 2 at 3), but does state, at another point, that "[m]any ignorant people assume that if you are 'gay', you MUST be a child molester" (id. at 5 (capitalization and emphasis in original)).

5

Porter "announced that she would not renew [Plaintiff's] contract, [Defendant RCS's personnel director] was cold as [Plaintiff] begged for [his] job." (Id.)  Notwithstanding Plaintiff's pleas, the Complaint alleges that Defendant RCS's personnel director and Defendant Porter "continued with their 'matter of fact' judgement . . . [and,] "[s]oon after that meeting, they began almost 'pushing' [Plaintiff] to resign.  This continued until the end of the school year."  (Id. at 3-4.)[3]

According to the Complaint, after "word of [Plaintiff's] non-renewal leaked out[,] . . . [f]aculty and staff often made homophobic type jokes within [Plaintiff's] hearing range . . . ." (Id. at 4.)  The Complaint also describes the following incidents:

> One afternoon, as [Plaintiff] was about to leave for the day, [his] lover came by the school.  He came to [Plaintiff's] end of the building as [Plaintiff] was walking out.  [Plaintiff's lover] was VERY upset, and needed [Plaintiff's] help.  [Defendant] Porter seeing [Plaintiff and his lover] on camera, sent another teacher (one of her pets) out to investigate.  She was very noisy and rude toward both [Plaintiff and his lover].  She wanted to know why [Plaintiff's lover] was at the school. [Plaintiff] was outRAGED!
>
> . . . .

---

[3] Elsewhere, the Complaint acknowledges that, as to the decision not to allow Plaintiff to remain employed with Defendant RCS, Defendant RCS's "superintendent had the final say . . . ." (Docket Entry 2 at 5.)  Moreover, although the Complaint asserts that, because he possessed that "final say," Defendant RCS's superintendent "is at fault as well" (id.), the Complaint neither identifies Defendant RCS's superintendent as a Defendant (see id. at 1-2) nor relates any factual allegations that would support an inference that Defendant RCS's superintendent took any action based on sex-based or sexual orientation-based animus (see id. at 2-7).

6

> At a faculty meeting in April [2011], [Plaintiff] expressed interest in an alternative licensing program in school administration. . . . [Plaintiff] was one of 2 teachers to raise their hands. . . . [Defendant Porter] jotted [Plaintiff's] name down; however, [Plaintiff is] sure it wasn't submitted for consideration by [Defendant RCS's] personnel [staff].
>
> . . . .
>
> After learning of [Plaintiff's] non-renewal, a good friend approached [the assistant principal who had attended the meeting at which Defendant Porter told Plaintiff she would not renew his contract] in a grocery store. [Plaintiff's friend] demanded to know why [Plaintiff] was "let go" . . . [and the assistant principal] stated to [Plaintiff's friend] . . . that "[Defendant] Porter had a problem with [Plaintiff's] sexual orientation."

(Id. at 4-5 (capitalization in original).)

## DISCUSSION

The Complaint does not identify a specific legal basis for Plaintiff's employment discrimination claims. (See id. at 1-7.) Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, <u>because of such individual's race, color, religion, sex, or national origin</u>." 42 U.S.C. § 2000e-2(a) (emphasis added). "In 1972, Congress . . . extended the coverage of Title VII . . . to allow suits against state and local government employers under the same conditions as private employers." Keller v. Prince George's Cnty., 827 F.2d 952,

955 (4th Cir. 1987). At that time, "§ 1 of the Civil Rights Act of 1871 [now codified at 42 U.S.C. § 1983] already provided a federal cause of action against any person who, acting under color of state law, deprived another person of any federal constitutional or statutory right." Id. However, "Title VII does not supplant § 1983." Beardsley v. Webb, 30 F.3d 524, 527 (4th Cir. 1994). Accordingly, as a general proposition, in addition to pursuing discrimination claims under Title VII, "[p]ublic employees are entitled to bring § 1983 actions asserting claims based on equal protection violations." Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 566 (4th Cir. 2011).

In this case, Plaintiff has failed to state a viable claim under Title VII. First, Title VII does not prohibit employment discrimination based on "sexual orientation." See 28 U.S.C. § 2000e-2(a) (identifying only "race, color, religion, sex, [and] national origin" as protected classes); Wrightson v. Pizza Hut of Am., Inc., 99 F.3d 138, 143 (4th Cir. 1996) (agreeing that "Title VII does not afford a cause of action for discrimination based upon sexual orientation"). Second, to the extent the Complaint alleges employment discrimination based on "sex" (a protected class under Title VII, see 28 U.S.C. § 2000e-2(a)), it does so only in a conclusory fashion without factual allegations that would support an inference that Plaintiff suffered adverse employment action based on his sex (i.e., because he is male).

8

For this same reason, although sex constitutes a protected class under the Equal Protection Clause, see Knussman v. Maryland, 272 F.3d 625, 635 (4th Cir. 2001), Plaintiff has failed to state a viable claim of employment discrimination based on sex under Section 1983. See generally McCray v. Pee Dee Reg'l Transp. Auth., 263 Fed. Appx. 301, 305 (4th Cir. 2008) (ruling that, when a plaintiff pursues "a claim for discrimination under . . . § 1983 . . . [, the] elements of [the] claim . . . mirror those of Title VII: A plaintiff must provide direct evidence of discriminatory treatment or proceed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)" (internal parallel citations omitted)); accord Mullen v. Princess Anne Volunteer Fire Co., Inc., 853 F.2d 1130, 1136 (4th Cir. 1988) (ruling that standard "developed in the Title VII disparate treatment context . . . is applicable to cases, such as suits under § 1981 and § 1983, where proof of discriminatory intent is required"). However, as to discrimination based on sexual orientation, Plaintiff has come forward with more than conclusory allegations. Most notably, the Complaint alleges that an administrator at the school where Plaintiff worked has admitted that Plaintiff was "let go" because Defendant Porter "had a problem with [Plaintiff's] sexual orientation." (Docket Entry 2 at 5.)

"The Equal Protection Clause . . . commands that no State shall 'deny to any person within its jurisdiction the equal

9

protection of the laws.'" Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (quoting U.S. Const. amend. XIV, § 1). In other words, the Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Id. (emphasis added). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "Classifications based on race, national origin, alienage, sex, and illegitimacy must survive heightened scrutiny in order to pass constitutional muster. All other classifications need only be rationally related to a legitimate state interest." Goulart v. Meadows, 345 F.3d 239, 260 (4th Cir. 2003); see also Veney v. Wyche, 293 F.3d 726, 731-32 (4th Cir. 2002) ("[C]laims that [one] has been discriminated against on the basis of sexual preference [are] . . . subject to rational basis review[.]" (citing Romer v. Evans, 517 U.S. 312, 319-20 (1996))).

Accordingly, because Plaintiff has come forward with factual allegations, which (if accepted as true, as the Court must at this stage) suffice to support an inference that Defendant Porter singled Plaintiff out from others similarly situated (i.e.,

10

competent teachers) and subjected Plaintiff to adverse action (i.e., non-renewal of his teaching contract at Defendant Porter's school and/or interference with Plaintiff's attempt to obtain another position with Defendant RCS) due to Plaintiff's sexual orientation, Plaintiff's claim can proceed beyond preliminary screening unless the Court must conclude, as a matter of law, that Defendant Porter's alleged action bore a rational connection to a legitimate governmental interest.

The Court cannot make that determination at this juncture. See, e.g., Lathrop v. City of St. Cloud, Minn., Civ. No. 10-2361(DWF/LIB), 2012 WL 185780, at *7 (D. Minn. Jan. 23, 2012) (unpublished) (allowing case to move forward where factual dispute existed as to whether the defendants treated the plaintiff adversely based on his sexual orientation and the defendants "ha[d] not alleged . . . that any legitimate governmental concerns would justify treating a homosexual police officer differently in terms of discipline than a heterosexual officer"); Stroder v. Kentucky Cabinet for Health & Family Servs., No. 09CV947H, 2010 WL 2464913, at *2 (W.D. Ky. June 14, 2010) (unpublished) (refusing to dismiss case at pleading stage because, "[w]ithout any discovery, it is unknown exactly why [the defendant] terminated [the plaintiff] and, if it was because of his sexual orientation, whether there was a rational basis for that decision"); see also Weaver v. Nebo Sch. Dist., 29 F. Supp. 2d 1279, 1289 (D. Utah 1998) ("The record now

11

before the court contains no job-related justification for not assigning [the plaintiff] as volleyball coach. Nor have the defendants demonstrated how [her] sexual orientation bears any rational relationship to her competence . . . . Because a community's animus towards homosexuals can never serve as a legitimate basis for state action, the defendants' actions based on that animus violate the Equal Protection Clause."); Glover v. Williamsburg Local Sch. Dist. Bd. of Educ., 20 F. Supp. 2d 1160, 1174 (S.D. Ohio 1998) (ruling in favor of teacher on Equal Protection Clause claim where trial evidence established that "nonrenewal decision was motivated by animus [against homosexuals] . . . [and] the defendants did not present any evidence at trial to support a legitimate rationale for discriminating against homosexual teachers," while observing that "'desire to effectuate one's animus against homosexuals can never be a legitimate governmental purpose'" (quoting Stemler v. City of Florence, 126 F.3d 856, 874 (6th Cir. 1997))).

The fact that the Complaint sufficiently alleges a sexual orientation-related Equal Protection Clause violation by Defendant Porter, however, does not mean that the allegations of the Complaint support a Section 1983 claim against Defendant RCS (rather than just against Defendant Porter). "To hold a . . . local government entity liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or

12

custom of the [local government entity] caused the violation." Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (internal parentheses omitted). The Complaint fails to allege that Defendant RCS had a policy or custom that authorized discrimination based on sexual orientation in employment, much less to identify factual matter that would support such a general allegation. Further, "[t]o hold a [local government entity] liable for a single decision (or violation), the decisionmaker must possess 'final authority to establish [governmental] policy with respect to the action ordered.'" Id. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). The Complaint does not assert that Defendant RCS allowed school principals to set policy regarding what personal characteristics, such as sexual orientation, could be considered in making employment decisions.[4]

Moreover, Defendant RCS "cannot be held liable for personnel decisions over which it did not retain final review authority; that is, it is not liable for decisions committed to [a principal's] discretion because there is no respondeat superior liability under

---

[4] "[M]erely 'going along with the discretionary decisions made by one's subordinates is not a delegation to them of the authority to make policy.'" Lytle v. Doyle, 326 F.3d 463, 472 (4th Cir. 2003) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988)). To the contrary, "the type of policymaking authority which can invoke § 1983 liability is 'authority to set and implement general goals and programs of [the local] government [entity], as opposed to discretionary authority in purely operational aspects of government.'" Id. (quoting Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987)).

13

§ 1983." Id. (citing Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978)). "Rather, [Defendant RCS] is only liable for acts that it has 'officially sanctioned or ordered.'" Id. (quoting Pembaur, 475 U.S. at 480). "This means that [Plaintiff] must demonstrate that [Defendant RCS] was aware of the [alleged] constitutional violation and either participated in, or otherwise condoned, it." Id. at 782-83. The Complaint does not allege sufficient factual matter to warrant such a conclusion.

In sum, the Complaint lacks factual allegations that would support a Section 1983 claim against Defendant RCS.

CONCLUSION

Plaintiff has failed to state a viable claim under Title VII because the Complaint sets forth only conclusory allegations of discrimination on the basis of sex and because Title VII does not prohibit discrimination on the basis of sexual orientation. The absence of adequate factual allegations to show that Plaintiff suffered any adverse employment action because of his sex similarly renders fatally deficient any Section 1983 claim by Plaintiff for a sex-based violation of the Equal Protection Clause. Conversely, the Complaint does allege factual matter that suffices to permit Plaintiff to pursue a claim against Defendant Porter under Section 1983 on the grounds that she discriminated against him due to his sexual orientation in contravention of the Equal Protection Clause.

The Complaint, however, offers insufficient factual allegations to allow Plaintiff to maintain such a claim against Defendant RCS.

**IT IS THEREFORE ORDERED** that Plaintiff's request to proceed as a pauper (Docket Entry 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1) if Plaintiff agrees to proceed only against Defendant Porter under Section 1983 for violating the Equal Protection Clause by discriminating based on sexual orientation, he shall file a written notice to that effect on or before June 4, 2012; <u>or</u>

2) if Plaintiff wants to pursue any cause(s) of action other than one against Defendant Porter under Section 1983 for violating the Equal Protection Clause by discriminating based on sexual orientation, he shall file, on or before June 4, 2012, <u>either</u> an Amended Complaint that clearly identifies and contains sufficient factual allegations to support any such additional cause(s) of action <u>or</u> he shall file a memorandum of not more than 10 pages showing cause why the Complaint's allegations suffice to support any such clearly-identified, additional cause(s) of action.[5]

---

[5] If Plaintiff files an Amended Complaint, he should consider whether Defendant RCS is a proper party or "is merely a component of the [local] County Board of Education, and therefore lacks the capacity to be sued," <u>Smith v. Cabarrus Cnty. Sch.</u>, No. 1:08CV448, 2009 WL 2486331, at *3 (M.D.N.C. Aug. 11, 2009) (unpublished) (Sharp, M.J.) (describing county board of education as "entity that is properly subject to suit"). Further, because "Title VII does not authorize a remedy against individuals for violation of its provisions," <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d 462, 472 (4th Cir. 1999), to the extent Plaintiff asserts a Title VII claim in an Amended Complaint, said claim can lie only against his employer.

**IT IS FURTHER ORDERED** that any failure by Plaintiff to comply with this Order will constitute grounds for sanctions, including dismissal of this case.

**IT IS FURTHER ORDERED** that, after June 4, 2012, the Clerk's Office shall refer this case back to the undersigned United States Magistrate Judge for further action.

                                                   /s/ L. Patrick Auld
                                                        **L. Patrick Auld**
                                      **United States Magistrate Judge**

May 4, 2012